LOTTINGER, Judge.
This is a libel action which is before us on an appeal taken by the plaintiff from a judgment of the Lower Court sustaining an exception of no cause of action filed on behalf of defendant and dismissing the former’s suit,
The pertinent allegations of the petition filed herein are as follows:
«* * * * * *
-2-
Defendant, The Morning Treat Coffee Co., Inc., through its president, James Lieux, wrote a letter dated January 15, 1963, to Mr. John B. Wegener, F. & V. Div., A.M.S., U. S.Department of Agriculture, Room 0727, So. Agriculture Building, Washington, 25, D. C., photostatic copy of which is hereby attached, filed, and made part hereof, and marked Exhibit “A”.
-3-
That a copy of the said letter was mailed to Inspector Earl Burk of the Marketing and Services Section of the U. S. Department of Agriculture, at Hammond, Louisiana.
*175 -4-
That a copy of the said letter was sent to Mr. Sheffield Spring, Purchasing Department, Division of Administration, Room 210, Capitol Annex, Baton Rouge, Louisiana.
-5-
That copies of the said letter were mailed to certain members of the coffee trade of New Orleans, Louisiana.
-6-
That the said letter sent out by The Morning Treat Coffee Co., Inc., of Baton Rouge, Louisiana, through its president, James Lieux, on January 15, 1963, referred in Paragraph One, to ‘Coffee being supplied to the State of Louisiana on their last bid for seventy thousand pounds.’
-7-
That at the time, the defendant knew that the only such 70,000 pound coffee contract existing with the State of Louisiana was the one awarded to the plaintiff herein, as per copy of Contract #169H-629, dated December 27, 1963, between the State of Louisiana and the Lake Breeze Coffee Co., Inc., the plaintiff herein, which copy of said contract is herein attached, filed, and made part hereof, and marked Exhibit “B”.
-8-
That defendant in the said letter of January 15, 1963, attempted to influence Mr. John B. Wegener of the U. S. Department of Agriculture, Mr. Earl Burk, inspector for the U. S. Department of Agriculture, and Mr. Sheffield Spring, of the Division of Administration of the State of Louisiana, so as to effect a revocation of the authorization already given to the plaintiff to substitute other coffees than that called for in the said Contract #169H-629.
-9-
That defendant libelled and did irreparable damage to the reputation and trade of the plaintiff, maliciously and wantonly by stating in the letter of January 15, 1963, to Mr. John B. Wegener, that the coffees to be used by plaintiff were bootlegged in violation of Brazil law, that they were handled by inferior and unsanitary methods, that the coffee was subjected to a great amount of dampness, and that the only reason the coffee was preroasted was to cover up the fuz from ]the mildew that cpuld easily be seen if the coffee were green.
******
-16-
That the said coffees roasted by the plaintiff were passed as satisfactory as to grade, roast, and cup, by the U. S. Department of Agriculture as satisfactory and meeting all of the specifications, except the fact that they were semi-roasted instead of green, prior to being roasted fully by plaintiff, as per certificate of inspection and passing issued by the U.S.D.A. at Hammond, Louisiana, on January 30, 1963, signed by T. Eugene Smith, and as per statement of Fees of the U.S.D.A., Bill #HAM-63-212, dated February 8, 1963, both attached herein, filed, and made a part hereof, and marked Exhibits “D” and “E”.
-17-
Permission to use semi-roasted coffees in Contract #169H-629 had been given to the plaintiff, as admitted by Mr. E. Guy Martin in his letter of January 18, 1963, herein made a part of the record.
-18-
The defendant in its letter of January 15, 1963, alleged that ‘the type of *176 coffee specified in the bid is available in warehouses in New Orleans today provided you pay for it at a price of about thirty and half cents per pound.’
-19-
A Longshoremen’s Strike made it virtually impossible to obtain the coffees called for in said Contract #169H-629 between the Lake Breeze Coffee Co., Inc. and the State of Louisiana.
* * * * * *»
Exhibit “A” referred to in Article 2 of the plaintiff’s petition re'ads as follows:
“Letterhead of Morning Treat Coffee 4500 Choctaw Dr. P. O. Box 535 Baton Rouge, Louisiana
January 15, 1963
Mr. John B. Wegener F. & V. Div., A.M.S. U. S. Department of Agriculture Room 0727, So. Agriculture Bldg. Washington 25, D. C.
Dear Mr. Wegener:
It has been brought to my attention that the coffee being supplied the state of Louisiana on their last bid for seventy thousand pounds is pre-roast-ed coffee. In submitting the Morning Treat Coffee Co. bid, I quoted on green coffee according to specifications. The pre-roasted coffee was not in the specifications and can be purchased at four cents per pound discount. In my opinion this should not be acceptable as it is not fair to other bidders.
Mr. Burke has understood that the reason this type of coffee was substituted was because the type of coffee on the bid was not available due to the dock strike. The type of coffee specified on the bid is available in warehouses in New Orleans today provided you pay for it at a price of about thirty and one half cents to thirty-one cents per pound green.
This pre-roasted coffee is coffee that was exported from the ports of Cayenne, French Guiana or Parimarbo, Dutch Guiana. These two countries in South America are not producing countries. This coffee was bootleged from Brazil on barges and ox-carts in violation of Brazilian law. In the transportation of this coffee to the Guianas it is handled by inferior and unsanitary methods. Mainly the coffee is subjected to a great amount of dampness. I have seen some of this coffee in the green form in New Orleans and it was covered with mold and mildew.
In my opinion the obvious reason that ■this coffee is pre-roasted is to cover up the fuz from the mildew that could easily be seen if the coffee was green. Also once a coffee is roasted the black bean defects are easily covered by the color of the adjacent beans.
If you need additional information on this type of coffee you may obtain it from the following importers:
Mr. Leon Israel Leon Israel Bros. 300 Magazine St. New Orleans, Louisiana
Lafaye & Arnaud 106 Board of Trade Arcade New Orleans, Louisiana
Very truly yours
MORNING TREAT COFFEE CO., INC. /s/ James Lieux President
cc: Mr. Earl Burke Box 151 Hammond, La.
Mr. Sheffield Spring Purchasing Dept., Div. of Administration
Room 210 Capitol Annex Baton Rouge, Louisiana”
*177 The exceptions state that the petition discloses no cause of action for the following reasons:
“ 1.
******
(a) That the letter allegedly written by the exceptor is not shown to have reference to the particular contract awarded to the plaintiff and that even if the alleged letter did in fact refer to plaintiff’s contract that this does not constitute grounds for the action filed by the plaintiff;
(b) That the alleged letter was an expression of the conduct of a corporation in respect to a contract with the State of Louisiana, and as such constituted the expression in respect to public affairs and under the provisions of Louisiana Revised Statutes 14:49 such a comment constitutes a qualified privilege and the plaintiff’s petition does not show that the privileged communication was untrue or was written with malice.
2.
Exceptor further shows that plaintiff’s own petition admits the truth of the allegation in exceptors letter that the coffees furnished by the plaintiff were pre-roasted or semi-roasted coffees, and thus discloses no cause of action for libel against defendant.”
As will be seen by a reading of the above, the first ground upon which the exception is based, is that the letter is not shown to have reference to the particular contract awarded to the plaintiff. This contention is without merit for the letter specifically refers to a bid for seventy thousand pounds of pre-roasted coffee and the allegations of Article 7 of the petition specifically state that the defendant knew that the only such seventy thousand pound coffee contract existing with the State of Louisiana was the one awarded to the plaintiff. The factual allegation makes this ground upon which the exception is founded untenable.
The defendant next sets forth that the petition fails to allege a cause of action because under LSA-R.S. 14:49 such a comment constituted a qualified privilege and the petition does not show the communication to be untrue or written with malice. This contention is likewise without merit. The petition as a whole infers that the statements made in the letter were false and according to Article 9 of the petition it is specifically charged that the statements were malicious and wanton.
The final ground upon which the exception rests is the contention that plaintiff has admitted the truth of the contents of defendant’s letter to the effect that the coffees furnished were pre-roasted or semi-roasted. The gravamen of the offense charged by plaintiff against defendant is not the untruth of the facts as recited with respect to the coffee being pre-roast-ed or green. It is, rather, couched in the specific wording of Article 9 of the petition wherein plaintiff claims to have been libeled by the action of defendant in maliciously and wantonly stating that the coffees used by plaintiff “were bootlegged in violation of Brazil law, that they were handled by inferior and unsanitary methods, that the coffee was subjected to a great amount of dampness, and that the only reason .the coffee was pre-roasted was to cover up the fuz from the mildew that could easily be seen if the coffee was green.”
For the above and foregoing reasons, we think that the petition in this matter, coupled with Exhibit “A”, clearly set forth a cause of action; and, even if there were some doubt as to whether a cause of action were stated, it should be resolved in favor of trial on the merits under the jurisprudence of this state. (See Fontenot v. Fontenot, 235 La. 488, 104 So. 2d 431 and cases therein cited.)
*178 For the reasons assigned, the judgment appealed from is reversed and set aside and this case is hereby remanded to the District Court for further proceedings. Costs of this appeal are to be paid by appellee and all other costs are to await the final outcome of this suit.
Judgment reversed.